**Samuel DEUTSCH, Plaintiff,**

v.

**NOVARTIS PHARMACEUTICALS CORPORATION, Defendant.**

**Nos. 09–CV–4677 (ADS)(WDW), 09–CV–4678 (ADS)(WDW).**

United States District Court, E.D. New York.

July 16, 2010.

Valad & Vecchione, PLLC by Bart T. Valad, Esq., John J. Vecchione, Esq., of Counsel, Fairfax, V.A., Attorneys for the Plaintiffs.

Hollingsworth LLC by Katharine R. Latimer, Esq., Martin Calhoun, Esq., of Counsel, Washington, D.C., Attorneys for the Defendant.

Rivkin Radler LLP by Jesse J. Graham, II, Esq., of Counsel, Uniondale, N.Y., Attorneys for the Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

These product liability lawsuits involve two prescription drugs, Aredia and Zometa, sold by Defendant Novartis Pharmaceutical Corporation ("Novartis"). Plaintiff Samuel Deutsch alleges that his deceased wife developed osteonecrosis of the jaw ("ONJ") after being treated with

Aredia and Zometa. Plaintiff Beth Forman alleges that her deceased husband developed ONJ after being infused with Zometa. In addition to seeking compensatory damages, Deutsch and Forman (collectively "the Plaintiffs") have sought punitive damages based upon alleged corporate misconduct on the part of Novartis.

The parties agree that New York law applies to the Plaintiffs' substantive causes of action, but disagree about which state's law should govern the Plaintiffs' request for punitive damages. Novartis has filed a motion in both cases, contending that New Jersey law should apply. For the reasons discussed below, the Court finds that New Jersey law should be applied on the issue of punitive damages.

## I. BACKGROUND

Novartis is a Delaware corporation that has its principal place of business in New Jersey. Novartis produced, developed, and marketed Aredia and Zometa, prescription drugs used in the treatment of metastatic bone disease, a cancer-related condition.

Helene Deutsch, a New York resident, was infused with Aredia and Zometa as part of a treatment regimen for breast cancer. John Napolitano, also a New York resident, was administered Zometa as part of his treatment for prostate cancer. The complaints allege that they suffered from ONJ as a result of taking these medications. Both Helene Deutsch and Napolitano passed away after filing the instant lawsuits. However, their respective spouses, Samuel Deutsch and Beth Forman, continue to pursue claims against Novartis.

The Plaintiffs allege that Novartis is strictly liable for placing Aredia and Zometa in the stream of commerce. They have also asserted causes of action sounding in negligence, as well as claims for breach of express and implied warranties, and loss of consortium. In addition to seeking compensatory damages, the Plaintiffs have sought punitive damages based upon alleged corporate misconduct on the part of Novartis. In particular, the Plaintiffs allege that:

● Novartis knew or should have known that Aredia and Zometa would have a heightened effect on the jaw bone. The Plaintiffs maintain that, despite this knowledge, Novartis failed to assign dentists, maxillofacial surgeons, or any jaw or mouth bone specialists to clinical trials for either drug. According to the Plaintiffs, this was a design flaw that tainted all of the information that Novartis provided to the Food and Drug Administration ("FDA"), other regulatory agencies, and peer-reviewed journals. Compl. ¶ 11.

● Novartis was notified by a physician in 2002 that he had dozens of cases in which patients taking Aredia had experienced severe problems with their jaws. The Plaintiffs allege that Novartis had similar information about the effects of Zometa. Despite this purported knowledge, Novartis allegedly failed to disclose this information to physicians or the public and failed to study the link between these drugs and osteonecrosis. According to the Plaintiffs, Novartis continued to aggressively market Zometa while downplaying unfavorable findings. Compl. ¶ 14, 15, 16.

● Novartis, to maximize profit, specified excessive dosage and dosing schedules for Zometa. Compl. ¶ 21.

With these allegations in mind, the only issue for the Court to decide at this time is whether to apply the law of New York or the law of New Jersey on the issue of punitive damages.

## II. DISCUSSION

■ Novartis contends that New Jersey law should apply because the conduct rele-

vant to the Plaintiffs' request for punitive damages occurred in or originated from New Jersey. The Plaintiffs maintain that New York law ought to apply because their cases have strong ties to this State.

■■■ In diversity jurisdiction cases, federal courts "must look to the choice of law rules of the forum state." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir.1998). In New York "the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." *Id.* "In tort actions, if there is a conflict of laws, New York courts apply an 'interests analysis,' under which the law of the jurisdiction having the greatest interest in the litigation is applied." *Id.* (quoting *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir.1992)); *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 521, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994). "In deciding which state has the prevailing interest," courts must "look *only to those facts or contacts that relate to the purpose of the particular laws in conflict.*" *AroChem Int'l*, 968 F.2d at 270 (quoting *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985)) (emphasis added). The Second Circuit has explained that " '[u]nder this formulation, the significant contacts are, almost exclusively, the parties domiciles and the locus of the tort.' " *Id.* (quoting *Schultz*, 65 N.Y.2d at 197, 491 N.Y.S.2d 90, 480 N.E.2d 679).

The parties agree that there is an actual conflict in the laws of New York and New Jersey on the issue of punitive damages. New Jersey caps punitive damages at the greater of $350,000 or five times the compensatory damages award. N.J. Stat. Ann. § 2A:15–5.14(b). In addition, under the New Jersey Products Liability Act, punitive damages are not available if a product was approved by the FDA, unless "the product manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question." N.J. Stat. Ann. § 2A:58C–5(c). New York, however, imposes no such limitations on the recovery of punitive damages. In light of these clear conflicts, the Court must conduct the "interests analysis" to determine which state's law should apply in this case.

■■ "Where there are conflicts involving conduct-regulating rules, 'the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.' " *Guidi v. Inter–Continental Hotels Corp.*, No. 95 Civ. 9006, 2003 WL 1907901, at *1 (S.D.N.Y. Apr. 16, 2003) (quoting *Cooney v. Osgood Mach.*, 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993)). On the other hand, "[w]hen the issue concerns loss-allocation rather than conduct, New York courts will analyze the respective domiciliary interests" according to the rules articulated in *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). *Id.*

■■ It is well-established in this Circuit that punitive damages are conduct-regulating issues. *See Guidi*, 2003 WL 1907901, at *1 (collecting cases); *Dickerson v. USAir, Inc.*, No. 96 Civ. 8560, 2001 WL 12009, at *8 (S.D.N.Y. Jan. 4, 2001) (citing *Saxe v. Thompson Medical Co.*, No. 83 Civ. 8290, 1987 WL 7362, at *1 (S.D.N.Y. Feb. 20, 1987)); *Lombard v. Economic Dev. Admin.*, 94 Civ. 1050, 1995 WL 447651, at *6, 1995 U.S. Dist. LEXIS 10518, at *16 (S.D.N.Y. July 27, 1995) ("The tort issues in conflict, primarily the differences in the availability of punitive damages, are conduct-regulating issues."); *Wang v. Marziani*, 885 F.Supp. 74, 77 (S.D.N.Y.1995) (same); *Wilson v. Chevron,*

No. 83 Civ. 762, 1986 WL 14925, at *3 (S.D.N.Y. Dec. 17, 1986) (stating that punitive damages "are not meant to compensate the plaintiff, but rather are designed to punish the defendant for egregious conduct."). It follows, then, that the law of the jurisdiction where the conduct occurred should apply in this case.

The Plaintiffs emphasize that their lawsuits have strong ties to New York. This is beyond serious dispute. The Plaintiffs, as well as their deceased spouses, are or were New York residents. Helene Deutsch and Napolitano were also treated with the drugs at issue in New York. However, the Plaintiffs overlook the fact that, for purposes of the choice of law analysis, the *relevant* contacts are those that relate to the alleged conduct giving rise to their claims for punitive damages. *Cooney,* 81 N.Y.2d at 72, 595 N.Y.S.2d 919, 612 N.E.2d 277.

Here, the Plaintiffs' complaints reflect that their requests for punitive damages stem from Novartis's alleged corporate misconduct. In particular, as noted above, the Plaintiffs contend that Novartis failed to conduct adequate clinical trials for these drugs and concealed information from the FDA, other regulatory agencies, and peer-review journals. In addition, the Plaintiffs allege that Novartis failed to disclose information concerning the connection between these drugs and osteonecrosis. The Plaintiffs also allege that, to maximize profits, Novartis increased the dosage and dosing schedule for Zometa to excessive levels. Critically, there is no allegation that *this* conduct occurred in New York.

In an apparent effort to show that these corporate decisions were made outside of New Jersey, the Plaintiffs point to the deposition testimony of Dr. Rainer Boehm, an executive at Novartis Oncology. The Plaintiffs claim that Dr. Boehm's testimony establishes that "all decisions" at Novartis "are and were made in Basel, Switzerland," where Novartis's pharmaceutical division is apparently based. Ps'. Brief at 3 (citing Ps'. Ex. 2, Pg. 20–21). However, the referenced testimony merely indicates that David Epstein, the President and CEO of Novartis Oncology, heads the pharmaceutical division from Basel, Switzerland. Ps'. Ex. 2, Pg. 21. This testimony does not establish the broad proposition that all corporate decisions are made in Basel. Even if it did, under the proper choice of law analysis, this would simply mean that Swiss law governing punitive damages would apply in this case. However, the Plaintiffs have not urged the Court to apply Swiss law, and for an obvious reason: punitive damages are not permitted under Swiss law. *See Exxon Shipping Co. v. Baker,* 554 U.S. 471, 128 S.Ct. 2605, 2623, 171 L.Ed.2d 570 (2008) (noting that Swiss law does not permit punitive damages).

The Plaintiffs also point out that Novartis is incorporated in Delaware and note that Delaware does not restrict punitive damages in cases such as these. Notably, the Plaintiffs have not actually asked the Court to apply Delaware law to their claims for punitive damages. However, even if they had, it is clear that New Jersey would have the greater interest in this case because "a corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter place." Restatement (Second) of Conflicts of Law § 145.

In the Court's view, the Plaintiffs have failed to rebut Novartis's plausible claim that the corporate decisions at issue were made from the company's corporate headquarters in New Jersey. Accordingly, because the relevant conduct at issue took place primarily in New Jersey, and not New York, New Jersey law on punitive

damages is applicable under the New York choice of law analysis.

### III. CONCLUSION

The Court finds that New Jersey law should be applied on the issue of punitive damages.

**SO ORDERED.**