**Beth FORMAN, individually and as Executrix of the Estate of John Napolitano, Plaintiff,**

v.

**NOVARTIS PHARMACEUTICALS CORPORATION, Defendant.**

No. 09–CV–4678 (ADS)(WDW).

United States District Court,
E.D. New York.

June 27, 2011.

Valad & Vecchione, PLLC, by Bart T. Valad, Esq., John J. Vecchione, Esq., Of Counsel, Fairfax, V.A., Lally & Misir, LLP, by Grant M. Lally, Esq., Of Counsel Mineola, NY, for the Plaintiff.

Hollingsworth LLC, by Joe G. Hollingsworth, Esq., Katharine R. Latimer, Esq., Martin Calhoun, Esq., Robert E. Johnston, Esq., William J. Cople, Esq., Of Counsel, Washington, D.C., Rivkin Radler LLP, by Jesse J. Graham, II, Esq., Of Counsel Uniondale, N.Y., for the Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Presently before the Court is a motion by the defendant Novartis Pharmaceuticals Corporation ("NPC") seeking to prevent the plaintiff Beth Forman ("the Plaintiff") from pursuing punitive damages at the trial of the above-captioned case on the grounds that: (1) federal law prohibits the Plaintiff from obtaining punitive damages under the relevant New Jersey statutes; (2) the Plaintiff lacks standing to pursue punitive damages under the relevant New Jersey statutes; and (3) the Plaintiff's evidence is insufficient to raise a genuine issue of material fact as to whether they are entitled to punitive damages. NPC also brought this motion in the case *Samuel Deutsch, individually and as Administrator of the Estate of Helene Deutsch v. Novartis Pharmaceuticals Corporation,* No. 09–CV–4677 ("the Deutsch case"). On June 20, 2011, the parties in the Deutsch case entered into a stipulation of settlement on the record. Insofar as the Court is entering this order after the date of the settlement in the Deutsch case, this decision is only applicable to the Forman case.

For the reasons stated below, the Court finds that federal law does not preempt the Plaintiff's right to pursue punitive damages under the relevant New Jersey statutes for NPC's alleged violations of the duty it owed to the Plaintiff, nor does the Plaintiff lack standing to seek punitive damages. The Court reserves decision as to whether a genuine issue of material fact

exists to permit an award of punitive damages.

## I. BACKGROUND

In an opinion dated July 16, 2010, this Court held that punitive damages in the Forman case and the Deutsch case were governed by New Jersey law. *See Deutsch v. Novartis Pharms. Corp.*, 723 F.Supp.2d 521 (E.D.N.Y.2010). In New Jersey, punitive damages for products liability causes of action generally are governed by the New Jersey Punitive Damages Act ("NJPDA"), which provides that:

> Punitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.

N.J.S.A. § 2A:15–5.12(a). In addition, the NJPDA sets forth the following non-exclusive list of factors that the factfinder must consider in determining whether to award punitive damages:

> (1) The likelihood, at the relevant time, that serious harm would arise from the defendant's conduct;
>
> (2) The defendant's awareness of reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct;
>
> (3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and
>
> (4) The duration of the conduct or any concealment of it by the defendant.

*Id.* at (b)(1)-(b)(4). In addition, where, as here, a case involves a product or label approved by the Food and Drug Administration ("FDA"), the punitive damages provision of the New Jersey Products Liability Act ("NJPLA") provides drug and device manufacturers immunity from punitive damages if the drug or device which caused the harm was approved by the FDA, "or is generally recognized as safe and effective pursuant to conditions established by the [FDA] and applicable regulations, including packaging and labeling regulations." N.J.S.A. § 2A:58C–5(c). However, under the statute, this immunity is unavailable and punitive damages are permitted "where the product manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question." *Id.* (hereafter called the "exception" to the punitive damages immunity).

As an initial matter, the Plaintiff seeks to circumvent the application of the NJPLA entirely by: (1) rearguing this Court's choice-of-law decision; and (2) asserting that the punitive damages provision of the NJPLA is only applicable to suits brought pursuant to the NJPLA. Neither of these arguments is compelling. To the extent that the Plaintiff desired a reconsideration of the Court's choice of law decision, the time for bringing such a motion has long passed. Moreover, simply identifying cases—none of which directly addressed punitive damages—where courts have chosen not to apply New Jersey law is not equivalent to arguing that reconsideration is proper because of "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992) (internal quotation marks and citation omitted).

In addition, whether the NJPLA is applicable to the Plaintiff's punitive damages claim was already addressed in the context of the Court's choice of law decision. Not only did the Plaintiff acknowledge that the NJPLA governed her claims in opposing the application of New Jersey punitive damages law, (*see* Pls.' Op. Mem. at 6–7, Docket Entry # 348), but the Court's decision was premised on the fact that "punitive damages are conduct-regulating issues." *Deutsch*, 723 F.Supp.2d at 524. Insofar as New Jersey has chosen to regulate the conduct of pharmaceutical manufacturers in products liability actions through the NJPLA, this provision is applicable to the instant case.

The main dispute between the parties involves a decision by a New Jersey intermediate appellate court in *McDarby v. Merck & Co.*, 401 N.J.Super. 10, 949 A.2d 223 (N.J.Super.App.Div.2008), *appeal dismissed*, 200 N.J. 282, 980 A.2d 487 (2009), where the court held that the exception to the punitive damages immunity for FDA approved drugs and labeling was preempted by federal law, and severed the exception from the statute. As a result of *McDarby*, if a plaintiff's harm resulted from an FDA-approved drug or label, a manufacturer is immune from punitive damages under New Jersey law, and the factors set forth in the NJPDA are rendered moot. The applicability of the rationale in *McDarby* under federal law and to the facts of this case are at the core of the dispute between the parties.

## II. DISCUSSION

### A. As to Whether Federal Law Preempts the Exception to N.J.S.A. § 2A:58C–5(c)

#### 1. Legal Standard for Preemption

■ The federal preemption doctrine stems from the Supremacy Clause, U.S. Const. art. VI, cl. 2, and the "fundamental principle of the Constitution [ ] that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000). "The purpose of Congress is the ultimate touchstone in every preemption case." *N.Y. Rest. Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114, 123 (2d Cir.2009) (citing *Altria Group, Inc. v. Good*, 555 U.S. 70, 129 S.Ct. 538, 543, 172 L.Ed.2d 398 (2008)). The preemption analysis begins "with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 129 S.Ct. 1187, 1194–95, 173 L.Ed.2d 51 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (modifications omitted)). This is often referred to as the "presumption against preemption".

■ Congress enacted the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301, et *seq.* with a primary focus of ensuring that drugs are "safe, effective and not misbranded." *Sandoz Pharm. Corp. v. Richardson–Vicks, Inc.*, 902 F.2d 222, 230 (2d Cir.1990). It is well-established that enforcement of the FDCA is the sole province of the FDA. See 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."). Accordingly, to determine whether Congress intended to preempt a state law through the FDCA, there must be "clear evidence that state law require[es] an additional warning [that] would either compel the manufacturer to violate the terms of the FDCA or the FDA regulations, or would somehow be disruptive of the statutory and regulatory scheme." *Perry v. Novartis Pharm. Corp.*, 456 F.Supp.2d 678, 685 (E.D.Pa. 2006). The United States Supreme Court and a number of appellate courts, includ-

ing the Second Circuit, have addressed the question of whether the FDCA preempts state laws governing the pharmaceutical industry in a series of cases discussed below.

In *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001), the Supreme Court held that a state-law fraud-on-the-FDA cause of action based solely on the defendant's alleged misrepresentations to the FDA "conflict with, and are therefore impliedly pre-empted by, federal law." 531 U.S. at 348, 121 S.Ct. at 1017. In *Buckman*, the plaintiffs' claims did not rely on traditional state tort law, but rather "exist[ed] solely by virtue of the FDCA disclosure requirement." *Id.* at 353, 121 S.Ct. at 1012. As a result, the Supreme Court held that FDCA preempted the state-law fraud-on-the FDA cause of action because it sought to supplant the FDA's role in policing fraud against the FDA, which was a power Congress exclusively granted to the FDA under the FDCA. The Court held that permitting such claims "would cause applicants to fear that their disclosures to the FDA, although deemed appropriate by the [FDA], will later be judged insufficient in state court ... [providing] an incentive [for applicants] to submit a deluge of information", which would impose additional costs and burdens on the FDA and its ability to function. *Id.* at 351, 121 S.Ct. at 1019.

After the decision in *Buckman* affirming that state fraud-on-the-FDA claims were impliedly preempted by federal law, the Sixth Circuit in *Garcia v. Wyeth–Ayerst Labs.*, 385 F.3d 961 (6th Cir.2004) and the Second Circuit in *Desiano v. Warner–Lambert & Co.*, 467 F.3d 85 (2d Cir.2007), considered whether federal law also preempts a state's use of a fraud exception to a state statute which narrowed common law liability when the FDA had approved the marketing of a drug. Both *Desiano*

and *Garcia* involved a Michigan statute that immunized drug manufacturers from products liabilities claims that related to FDA approved products. See Mich. Comp. Laws § 600.2946(5) (hereinafter "M.C.L. § 2946(5)" or "the Michigan statute"). The immunity is not absolute, but rather subject to an exception that preserves liability if the drug manufacturer "[i]ntentionally withholds from or misrepresents to the [FDA] information concerning the drug that is required to be submitted under the [FDCA], and the drug would not have been approved, or the [FDA] would have withdrawn approval for the drug if the information were accurately submitted." M.C.L. § 2946(5)(a).

In *Garcia*, the Sixth Circuit held that there was no material difference between the specific cause of action for fraud on the FDA in *Buckman* and the portion of the Michigan statute that required proof of fraud committed against the FDA because both are "state court remedies requiring proof of fraud committed against the FDA". 385 F.3d at 965–66 (internal quotation marks and citation omitted). Thus, because the *Garcia* court found that the Michigan statute was equivalent to a "fraud-on-the-FDA" cause of action, the court held that the statute was preempted by the federal law. Subsequent to *Garcia*, the Second Circuit in *Desiano* reached the opposite conclusion.

In its analysis, the Second Circuit in *Desiano* first noted the difference in the characterization of a cause of action under the Michigan statute and the claims at issue in *Buckman*. Whereas the presumption did not apply to the new state-law cause of action for fraud-on-the-FDA in *Buckman* "because '[p]olicing fraud against federal agencies is hardly a field which the States have traditionally occupied'", the court noted that the cause of action under the Michigan statute could

not "reasonably be characterized as a state's attempt to police fraud against the FDA" because "[t]he object of the legislative scheme was rather to regulate and restrict when victims could continue to recover under preexisting state products liability law." 467 F.3d at 93–94 (citing *Buckman*, 531 U.S. at 347, 121 S.Ct. 1012). The court further noted that *Buckman* involved a "newly-concocted duty between a manufacturer and a federal agency" where "proof of fraud against the FDA *[was] alone sufficient* to impost liability". *Id.* at 95 (emphasis in original). By contrast, the claims under the Michigan statute sounded in traditional state tort law because they were "premised on traditional duties between a product manufacturer and Michigan consumers" and "[were] not premised principally (let alone exclusively) on a drug maker's failure to comply with federal disclosure requirements." *Id.* at 94–95.

Finally, the *Desiano* court noted that proof of fraud against the FDA is not an element of a products liability claim under Michigan law, but rather is an affirmative defense that the drug manufacturer must invoke before the existence of a properly-obtained FDA approval becomes relevant. *Id.* at 96. For these reasons, the Second Circuit held that the FDCA did not have preemptive effect on state common law claims under Michigan law. *Id.* at 97. The Supreme Court granted certiorari in *Desiano*, and the decision was affirmed without an opinion by an equally divided court. *Warner–Lambert Co., LLC v. Kent*, 552 U.S. 440, 128 S.Ct. 1168, 170 L.Ed.2d 51 (2008) (per curiam); *see Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 73 n. 8, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) ("Judgment entered by an equally divided Court is not entitled to precedential weight.") (internal quotation marks omitted). Accordingly, the rationale in *Desiano* is not binding federal precedent outside of the Second Circuit.

Finally, the most recent Supreme Court case to address preemption in the context of common-law claims against drug manufacturers was *Wyeth v. Levine*, 555 U.S. 555, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). In *Levine*, Wyeth argued that the plaintiff's state law failure to warn claim was preempted because the FDA had approved its drug and its labeling. The Supreme Court rejected this contention, and reaffirmed the presumption against preemption of state common-law tort suits against drug manufacturers, stating that "[Congressional] silence on the issue, coupled with its certain awareness of the prevalence of state tort litigation, is powerful evidence that Congress did not intend FDA oversight to be the exclusive means of ensuring drug safety and effectiveness." *Id.* at 1200. In addition, the Supreme Court noted that "the FDA has traditionally regarded state law as a complementary form of drug regulation" that provided "an additional, and important, layer of consumer protection that complements FDA regulation." *Id.* at 1202. Accordingly, the Supreme Court held that the FDCA does not preempt state law claims against drug manufacturers for failure to adequately warn of potential hazards.

### 2. Federal Preemption of N.J.S.A. § 2A:58C–5(c)–The *McDarby* Decision

In *McDarby v. Merck & Co.*, 401 N.J.Super. 10, 949 A.2d 223 (N.J.Super.App.Div.2008), the plaintiffs brought claims under the NJPLA against Merck & Co., Inc. ("Merck"), the manufacturer of a drug called Rofecoxib, alleging that they were damaged by Merck's inadequate warning of cardiovascular risks. Following a trial, the jury awarded one of the plaintiffs $15.7 million in compensatory and punitive damages as well as attorneys' fees and costs, and the other plaintiff $2.27 million in compensatory damages, attor-

neys' fees, and costs. On appeal, Merck argued that federal law preempted the compensatory punitive damages provisions of the NJPLA.

With regard to the failure to warn claim generally, the defendant argued that the FDCA preempted common law failure to warn claims. The *McDarby* court rejected this claim, stating that "[e]xisting New Jersey precedent clearly supports the conclusion that the FDCA does not preempt state-law tort remedies under theories of express conflict or implied preemption in this duty-to-warn context." 401 N.J.Super. at 53, 949 A.2d at 250. In support of this holding, the *McDarby* court cited a number of cases, including *Desiano*. However, with respect to the punitive damages provision, the *McDarby* court held that *Buckman*, and not *Desiano*, was the controlling precedent based on a perceived difference "between the purposes of compensatory and punitive damages that renders the distinctions drawn by the *Desiano* court between the fraud claims before it and those in *Buckman* inapplicable in the [context of the case]." *Id.* at 90, 949 A.2d at 273.

The *McDarby* court noted the similarity between the Michigan statute at issue in *Desiano* and N.J.S.A. § 2A:58C–5(c), as well as the fact that the *Desiano* holding was partially based on the fact that, "if immunity were overcome by evidence of a fraud, a plaintiff's entire common-law claim would then be recognized." *Id.* at 92, 949 A.2d at 275. However, the *McDarby* court focused only on the portion of the Second Circuit's rationale that distinguished the Michigan statute from a *Buckman* claim because it could not "reasonably be characterized as a state's attempt to police fraud against the FDA." *Id.* at 92–93, 949 A.2d at 274–75 (quoting *Desiano*, 467 F.3d at 94). In particular, the *McDarby* court observed that, unlike compensatory damages, the punitive damages

provision of the NJPLA was "designed to effectuate the State's interest in punishing unlawful conduct." *Id.* at 93, 949 A.2d at 275. Accordingly, the *McDarby* court found that the punitive damages claim was more akin to the statute at issue in *Buckman* insofar as the "statutory focus [was] narrowly drawn upon a defendant's act of knowingly withholding from or misrepresenting to the FDA information material to the harm alleged." *Id.* Thus, because the "limited claim for punitive damages [was] focused upon deterring a manufacturer's knowingly inadequate response to FDA information requirements" and "impinge[d] upon federal statute and regulation to the same extent that was recognized in *Buckman*" the court held that the *Desiano* strong presumption against preemption for common law compensatory claims was inapplicable. As a result, the court held that federal law preempted the exception to N.J.S.A. § 2A:58C–5(c) and severed the exception from the remainder of the statute, resulting in immunity from punitive damages claims based on FDA approved drugs and warnings. *Id.* at 93–96, 949 A.2d at 275–76.

Numerous state and federal courts have relied on *McDarby*, without any independent analysis, in holding that punitive damages are not available in all products liability claims, including failure to warn claims, involving a harm allegedly derived from an FDA-approved drug or label. See *Stanger v. APP Pharms., LLC*, No. 09–CV–5166, 2010 WL 4941451 (D.N.J. Nov. 30, 2010) (dismissing a claim for punitive damages as preempted based on *McDarby*); *Baker v. APP Pharms., LLC*, No. 09–CV–5725, 2010 WL 4941454 (D.N.J. Nov. 30, 2010) (same); *Cornett v. Johnson*, 414 N.J.Super. 365, 405, 998 A.2d 543, 567 (N.J.Super.App.Div.2010) (relying on *McDarby* in holding that a claim for punitive damages under the NJPLA that required a showing that "the FDA would

have responded differently to an application if the manufacturer had fully and accurately provided all the information that federal law required" was preempted under *Buckman*); *Bessemer v. Novartis Pharms. Co.*, No. MID–L–1835–8, at 37 (N.J.Super. Ct. Law Div. Apr. 30, 2010) ("The court finds N.J.S.A. § 2A:58C–5(c) bars punitive damages where a drug is approved by the FDA and follows the *McDarby* court's ruling that the exception to the PLA's bar on punitive damages is preempted by the FDCA.").

Moreover, at least one federal court in the *Aredia/Zometa* litigation reached the same conclusion as the *McDarby* court, namely that the federal law preempts the exception to N.J.S.A. § 2A:58C–5(c). See *In re Aredia and Zometa Prods. Liab. Litig.*, ("*Aredia/Zometa MDL Remand Order*") 2007 WL 649266, at *10 (M.D.Tenn.2007) (noting on a motion to remand that the court lacked federal question jurisdiction based on the exception to N.J.S.A. § 2A:58C–5(c) because the exception was preempted by the FDCA and therefore a court would not need to determine whether NPC violated a federal statute).

### 3. Whether the Court is Bound by *McDarby* to Find that Federal Law Preempts the Plaintiffs' claims for punitive damages

■ NPC contends that this Court is bound by the *McDarby* decision and its progeny to hold that punitive damages are barred in products liability actions with respect to FDA approved drugs and warning labels. The Court disagrees. Whether a state statute is preempted "depends on significant issues of federal law including, inter alia, the meaning of Supreme Court precedents, *e.g., Buckman*, and the scope of federal statutes, e.g., FDCA." *Desiano v. Warner–Lambert & Co.*, 467 F.3d 85, 91 (2d Cir.2007). Although the Court is bound by *McDarby's* interpretation of

New Jersey law, the Court must "answer independently issues of federal law." *Id.*

In addition, insofar as the state and federal district courts that have followed *McDarby* adopted *McDarby's* holding without an explanation or discussion of the relevant federal law, the Court does not find them to be binding or persuasive because they lack any independent analysis of the federal preemption issue. Moreover, NPC's attempt to persuade the Court to follow the *Aredia/Zometa MDL Remand Order* decision actually favors the Plaintiff's position on two levels. First, the MDL court relied on the rationale in *Garcia*, which supports the Plaintiff's contention that the Court should analyze the New Jersey statute under the *Desiano/Garcia* line of cases, as opposed to *Buckman*. In addition, the United States Magistrate Judge who issued the underlying opinion specifically acknowledged that, although he disagreed with the Second Circuit's rationale, the outcome of the preemption analysis would likely be different under *Desiano*. See *Aredia/Zometa MDL Remand Order*, 2007 WL 649266, at *9 n. 13.

Finally, although the Deutsch case is no longer before this Court, the Court notes that in the pretrial order, the plaintiff in the Deutsch case identified two grounds for pursuing punitive damages, namely that: (1) "Novartis acted with reckless and willful disregard for Mrs. Deutsch's health and well being so as to amount to oppression, fraud and malice"; and (2) NPC "violated the standard of care as set out by the [FDCA]". (No. 09–CV–4677, Docket Entry # 473 at 3–4.) To the extent that Plaintiff Forman similarly seeks to premise a claim for punitive damages solely on a violation of the FDCA, the Court agrees with NPC that this claim is preempted under *Buckman*. However, as set forth below, the Court respectfully disagrees with the

*McDarby* court's application of federal preemption law and finds that federal law does not preempt a claim for punitive damages premised on state common law tort principles governing NPC's conduct toward the Plaintiffs.

### 4. Whether the FDCA Preempts the Fraud–on–the–FDA Exception to N.J.S.A. § 2A:58C–5(c)

As previously discussed, *McDarby* took the preemption analysis outside of the *Desiano/Garcia* line of cases altogether, and classified it under *Buckman*, based on its finding that the New Jersey legislature narrowly drafted N.J.S.A. § 2A:58C–5(c) to have the "single focus" of policing fraud on the FDA. However, the relevant distinction between preempted *Buckman* claims and permitted *Desiano* claims is not the motivation for creating the statute, but rather "the distinction between a fraud-on-the-FDA tort and a traditional common law tort that must prove fraud to overcome an affirmative defense." *Yocham v. Novartis Pharms. Corp.*, 736 F.Supp.2d 875, 886 (D.N.J.2010); *see also In re Bayer Corp. Combination Aspirin Prods. Marketing & Sales Practices Litig.*, 701 F.Supp.2d 356, 370 (E.D.N.Y.2010) ("[A] state law claim only endures if it manages to incorporate, but not depend entirely upon, an FDCA violation and is premised on conduct that would give rise to liability under traditional common law principles."). Here, federal law does not preempt the Plaintiff's claim for punitive damages premised on NPC's alleged violation of its duty to consumers because: (1) it is properly classified under *Desiano* as a permitted state common-law tort claim premised on the obligations between a manufacturer and a consumer that require a prerequisite showing of fraud-on-the-FDA and (2) the presumption against preemption is equally applicable to claims for compensatory damages and punitive damages claims premised on state common-law torts.

#### a. Classifying the New Jersey statute under *Desiano*

Although the *McDarby* court characterized policing fraud-on-the-FDA as the single focus of the exception to N.J.S.A. § 2A:58C–5(c), a punitive damages claim in a products liability case under the NJPLA and the NJPDA "parallels federal safety requirements and is premised on a duty between defendants, as manufacturers of the alleged defective product, and plaintiffs, as . . . consumers." *Reilly v. Novartis Pharms. Corp.*, No. 07–CV–4665, 2009 WL 3010540, at *5 (D.N.J. Sept. 18, 2009). As previously stated, to the extent the Plaintiff is seeking punitive damages based solely on NPC's alleged misrepresentations to the FDA, this is not permissible. However, the Plaintiff in the instant case is also seeking punitive damages that stem from NPC's misrepresentations to decedent Napolitano and the medical community. By contrast, the fraud-on-the-FDA cause of action in *Buckman* was premised on a "newly concocted duty between a manufacturer and a federal agency." *Desiano*, 467 F.3d at 94–95; *In re Bayer Corp.*, 701 F.Supp.2d at 369 ("The misrepresentation at issue in *Buckman* was not made to the plaintiff—or consumers at large—but to the FDA itself.").

Furthermore, the *McDarby* court did not directly address whether, in drafting N.J.S.A. § 2A:58C–5(c), the legislature intended for the NJPDA to still apply to products liability cases against manufacturers involving FDA-approved drugs and warnings if the exception to the statute was satisfied. Rather, the *McDarby* court stated in a footnote, without any further application to the preemption issue, that "[t]he Punitive Damages Act is applicable to the present case in concert with the punitive damage provisions of the PLA." 401 N.J.Super. at 90 n. 47, 949 A.2d at 273 n. 47. Although *McDarby* does not address

this issue, numerous courts in the District of New Jersey have held that "a successful showing of fraud-on-the-FDA does not guarantee a punitive recovery" and a plaintiff "will still have to show, by clear and convincing evidence and in light of a variety of statutory factors, that [a defendant's] bad acts and omissions 'were actuated by actual malice or accompanied by a wanton and willful disregard' for the safety of foreseeable plaintiffs." *Haggerty v. Novartis Pharms. Corp.*, 2009 WL 5064779, at *4 (D.N.J. Dec. 15, 2009) (citing N.J.S.A. § 2A:15–5.12); *accord Sullivan v. Novartis Pharms. Corp.*, 602 F.Supp.2d 527, 537 (D.N.J.2009) ("N.J.S.A. § 2A:58C–5(c) is a cause of action for punitive damages, not one for fraud-on-the-FDA. A showing of fraud-on-the-FDA is simply a gateway, through which plaintiffs must pass before pursuing punitive damages. Ultimately, it is a substantial body of New Jersey law that determines when a jury may award punitive damages."); *Sullivan v. Novartis Pharm. Corp.*, 575 F.Supp.2d 640, 652 (D.N.J.2008) ("In contrast to *Buckman,* the present case does not involve a claim of fraud-on-the-FDA but instead involves a state statute which immunizes drug manufacturers from punitive damage liability unless the plaintiff can prove fraud-on-the-FDA. Stated differently, *Buckman* involved a specific cause of action for fraud-on-the-FDA, whereas the instant Plaintiffs must prove fraud on the FDA merely as a prerequisite to obtaining punitive damages under New Jersey law."); *see also Pitocco v. Novartis Pharms. Corp.*, 2009 WL 5149252 (D.N.J. Dec. 17, 2009); *Devine v. Novartis Pharm. Corp.*, No. 08–859, 2009 WL 3446404 (D.N.J. Oct. 19, 2009). That overcoming the exception to N.J.S.A. § 2A:58C–5(c) does not moot the NJPDA requirements is further supported by the statutory language, which provides that after fraud-on-the-FDA has been established "punitive damages may be awarded". N.J.S.A. § 2A:58C–5(c) (emphasis added). Accordingly, the fact that a showing of fraud-on-the-FDA is not dispositive of the punitive damages claim weighs against *Buckman* preemption.

Thus, as in *Desiano*, the Plaintiff's claim "[is] not premised principally (let alone exclusively) on a drug maker's failure to comply with federal disclosure requirements." *Id.* at 95; *see also Reilly*, 2009 WL 3010540, at *5 ("[T]he statutory scheme designed by the New Jersey legislature embodies traditional tort law considerations and is not premised exclusively on federal disclosure requirements. The conduct must be proven by clear and convincing evidence and the material withheld must be "material and relevant to the harm...." N.J.S.A. § 2A:58C–5(c)."). Moreover, the fact that fraud in FDA disclosures is necessary for the pre-existing common law punitive damages claim to survive, is not equivalent to a claim "based *solely* on the wrong of defrauding the FDA." *Desiano*, 467 F.3d at 95 (emphasis in original).

Accordingly, the Court respectfully disagrees with *McDarby's* classification of N.J.S.A. § 2A:58C–5(c) under *Buckman* because, under Second Circuit precedent, which binds this Court, "*Buckman* cannot be read as precluding such preexisting common law liability based on other wrongs, even when such liability survives only because there was *also* evidence of fraud against the FDA." *Id.* (emphasis in original); *Globetti v. Sandoz Pharms. Corp.*, No. 98–CV–2649, 2001 WL 419160, at *1 (N.D.Ala.2001) ("Although *Buckman* precludes a plaintiff from seeking damages because the defendant lied to the FDA, it is something completely different to contend that plaintiff is precluded from seeking damages for injuries due to lies to her. Notwithstanding that information may have been misrepresented to or concealed

from the FDA, once defendant undertook to misrepresent those facts to plaintiff, or to conceal from plaintiff facts it was bound to disclose, the plaintiff's claim no longer rests simply on the assertion that the agency was defrauded but on the additional fact that she was defrauded.").

Finally, the fact that the NJPDA is still applicable also contradicts the *McDarby* court's holding that federal law preempts the exception in N.J.S.A. § 2A:58C–5(c) because, like the claims in *Buckman,* it frustrates federal regulations. In *Yocham v. Novartis Pharmaceuticals Corporation,* 736 F.Supp.2d 875 (D.N.J.2010) the court addressed the issue of preemption with respect to a Texas statute that was similar to the Michigan statute in *Desiano.* The court in *Yocham* distinguished the impact of claims where fraud on the FDA is an element as opposed to those where fraud on the FDA is dispositive, stating:

> With a stand-alone fraud-on-the-FDA tort, unlike the present case, there is a much higher incentive to avoid any such misrepresentation since there is *no fallback defense based on the actual adequacy of the drug's ultimate labeling.*

736 F.Supp.2d at 887(emphasis added). Although not directly analogous, the punitive damages provision also has a fallback defense, which is that the defendant did not act with malice or exhibit willful and wanton conduct, or engage in any of the other conduct listed in N.J.S.A. § 2A:15–5.12(b)(1)–(b)(4). This similarly avoids "the unique increase in incentive created by a tort in which the sole conduct element was such misrepresentation to the FDA." *Id.* at 888.

### b. Preemption and the Difference between Punitive and Compensatory Damages

The *McDarby* court characterized the exception to N.J.S.A. § 2A:58C–5(c) as the type of claim governed by *Buckman* based on the difference between compensatory damages and punitive damages, which are a form of punishment, as well as its finding that the New Jersey legislature narrowly drafted the exception to "police fraud against the FDA." Although in *Desiano* the Second Circuit stated in a footnote in that it "ha[d] found no evidence that the goal of preventing or punishing fraud against the FDA in any way motivated Michigan legislators to enact the statutory framework in question", there is no indication that such a motivation would have been determinative on the preemption issue. *Desiano,* 467 F.3d at 94 n. 5. Accordingly, even though *McDarby* held that policing fraud against the FDA was a primary motivation for establishing the exception to N.J.S.A. § 2A:58C–5(c), this fact alone does not warrant a finding of preemption under federal law.

Moreover, contrary to the holding in *McDarby,* the presumption against preemption is equally applicable to claims for compensatory and punitive damages. In *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), the Supreme Court held that a state law claim for punitive damages based on conduct related to radiation hazards was not preempted by the Price–Anderson Act because "[p]unitive damages have long been a part of traditional state tort law" and "Congress assumed that traditional principles of state tort law would apply with full force unless they were expressly supplanted." *Id.* at 255, 104 S.Ct. at 625 (superceded by statute). As applied to the pharmaceutical context, the Supreme Court in *Buckman* explicitly acknowledged that the punitive damages claims in *Silkwood* were distinguishable from the preempted fraud-on-the-FDA claims because they were based on "traditional state tort law principles". *Buckman,* 531 U.S. at 352, 121 S.Ct. at 1020 ("*Silkwood* is different from the present case, however, in several re-

spects. *Silkwood's* claim was not based on any sort of fraud-on-the-agency theory, but on traditional state tort law principles of the duty of care owed by the producer of plutonium fuel pins to an employee working in its plant.").

As stated above, the Supreme Court has recognized that a punitive damages claim based on traditional start tort law principles does not raise the same concerns as a dispositive fraud-on-the-FDA claim. Therefore, the Court respectfully disagrees with the rationale in *McDarby* that the exception to the punitive damages provision of the NJPLA is preempted because it "impinge[s] upon federal statute and regulation to the same extent that was recognized in *Buckman*". 401 N.J.Super. at 94, 949 A.2d at 276; *Silkwood,* 464 U.S. at 257, 104 S.Ct. 615, 78 L.Ed.2d 443 ("Paying both federal fines and state-imposed punitive damages for the same incident would not appear to be physically impossible. Nor does exposure to punitive damages frustrate any purpose of the federal remedial scheme.").

In addition, the rationale in *McDarby* is further eroded by the Supreme Court's decision in *Wyeth v. Levine,* which reaffirms that that the presumption against preemption is equally applicable to punitive and compensatory damages. In *Levine,* the Supreme Court stated that

> [s]tate tort suits uncover unknown drug hazards and provide incentives for drug manufacturers to disclose safety risks promptly. They also serve a distinct compensatory function that may motivate injured persons to come forward with information. Failure-to-warn actions, in particular, lend force to the FDCA's premise that manufacturers, not the FDA, bear primary responsibility for their drug labeling at all times. Thus, the FDA long maintained that state law offers an additional, and important, layer of consumer protection that complements FDA regulation.

555 U.S. 555, 129 S.Ct. 1187, 1202, 173 L.Ed.2d 51 (2009). Thus, under the reasoning in *Levine,* the FDA relies on the states to provide additional consumer protection not only in compensating consumers for harm, but also for *regulating the conduct of manufacturers.* Under New Jersey law, "[a]n award of punitive damages by a jury serves a twofold purpose: first to punish egregious misconduct, and second, to deter the offender, and others, from repeating it." *Mancini v. Township of Teaneck,* 349 N.J.Super. 527, 568, 794 A.2d 185 (N.J.Super.App.Div.2002). The Plaintiff benefits from the presumption here because states traditionally have regulated matters of health and safety and, as the Supreme Court has repeatedly held, "respect for the States as 'independent sovereigns in our federal system' leads us to assume that 'Congress does not cavalierly pre-empt state-law causes of action.'" *Levine,* 129 S.Ct. at 1195 n. 3 (quoting *Medtronic,* 518 U.S. at 485, 116 S.Ct. 2240, 135 L.Ed.2d 700); *see also Desiano,* 467 F.3d at 94 (recognizing that "State-based tort liability falls squarely within [a state's] prerogative to regulate matters of health and safety, which is a sphere in which the presumption against preemption applies, indeed, stands at its strongest" (quotation and modification omitted)).

In addition, following *Levine,* at least two courts have found that the Supreme Court's reaffirmance in *Levine* that there is a "strong presumption against preemption" supports a finding that a punitive damages provision with a fraud-on-the-FDA prerequisite identical to N.J.S.A. § 2A:58C–5(c) is not preempted under *Buckman. See Stanley v. Mylan Inc.,* No. 09–CV–124, 2010 WL 3718589, *7 (D.Utah Sep. 17, 2010) ("The Court notes that the effect of *Wyeth* is to strengthen the presumption against preemption that was

weakened in *Garcia*. As was the case in *Lake–Allen*, Defendants now before the Court offer no evidence that Congress intended to preempt the Utah statute. Therefore, the presumption against preemption holds[.]"); *Lake–Allen v. Johnson & Johnson, L.P.*, No. 08–CV–930, 2009 WL 2252198 (D.Utah July 27, 2009) (denying a motion to dismiss a punitive damages claim under an identical Utah statute as preempted because, in light of the "presumption against preemption" upheld in *Levine*, preemption was improper where there was a lack of authority suggesting that Congress intended to preempt a state law prerequisite to the imposition of punitive damages).

As the Supreme Court very recently stated in *Chamber of Commerce of United States v. Whiting*, —— U.S. ——, 131 S.Ct. 1968, 1985, 179 L.Ed.2d 1031 (2011):

> Implied preemption analysis does not justify a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives"; such an endeavor "would undercut the principle that it is Congress rather than the courts that preempts state law." *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88, 111, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (KENNEDY, J., concurring in part and concurring in judgment); *see Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 256, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). Our precedents "establish that a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." *Gade*, supra, at 110, 112 S.Ct. 2374.

*McDarby* did not address, and Novartis has failed to provide, any evidence that Congress intended to preclude punitive damages awards in products liability claims involving FDA approved drugs or labels. Accordingly, the high threshold for implied preemption is not met here, and the Court finds that the FDCA does not preempt the exception to N.J.S.A. § 2A:58C–5(c).

**B. As to the Plaintiff's Standing to Assert a Punitive Damages Claim**

NPC contends that, regardless of whether the exception to N.J.S.A. § 2A:58C–5(c) is preempted, because it requires the Plaintiff to prove that NPC "knowingly withheld or misrepresented information required to be submitted under the agency's regulations", the Plaintiffs lack standing to assert the punitive damages claim. As discussed in detail above, the Plaintiff is not attempting to privately enforce the FDCA. The Plaintiff is simply offering evidence that NPC knowingly withheld information from the FDA as a precursor to proving their state-common law based claim for punitive damages based on NPC's alleged breach of its duty to the consumer, decedent Napolitano, and the medical community. *See Von Essen v. C.R. Bard, Inc.*, 2007 WL 2086483 (D.N.J. June 18, 2007) ("More[o]ver, the statutory scheme designed by the New Jersey legislature embodies traditional tort law considerations and is not premised exclusively on federal disclosure requirements. The conduct must be proven by clear and convincing evidence and the material withheld must be 'material and relevant to the harm . . .'.") (citing N.J.S.A. § 2A:58C–5(c)). Accordingly, the Court finds that the Plaintiff has standing to assert her punitive damages claims.

**C. As to Whether there Is a Genuine Issue of Fact as To Whether the Plaintiffs Can Establish Punitive Damages**

NPC's final attempt to prevent the Plaintiff from seeking punitive damages is to contend that the Plaintiff does not have sufficient evidence to satisfy the fraud-on-the-FDA prerequisite to seeking punitive damages under N.J.S.A. § 2A:58C–5(c).

The Court declines to address this issue at this stage in the litigation.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that NPC's motion to preclude the Plaintiff from pursuing punitive damages under N.J.S.A. § 2A:58C–5(c) is denied.

**SO ORDERED.**